**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA** ) **Criminal. No. 22-294 (BAH)**

**v.** )

**LACY LEANN SHUCK** )

**DEFENDANT'S MEMORANDUM IN AID OF REVOCATION HEARING**

Ms. Lacy Shuck, through counsel, hereby submits this memorandum for the Court's consideration in determining the appropriate final disposition of the pending Probation Office Petition, ECF No. 3. For the reasons below, the Court should not revoke Ms. Shuck's term of supervised release, but should instead continue Ms. Shuck on supervised release and order Ms. Shuck to participate in a new mental health and substance abuse assessment and treatment program so that she can continue to get the help she needs for her well-documented dual-diagnoses.

Pending before the Court are three alleged supervised release violations set forth in the Probation Office Petition, ECF No. 3. Ms. Shuck intends to concede these violations on the record at the scheduled preliminary revocation hearing on August 9, 2024 at 9:30AM. The sole issue before the Court at that hearing will be determining an appropriate resolution of the pending petition. For the reasons discussed below, continuing Ms. Shuck on supervised release is a more appropriate resolution of the pending petition than revocation and prison. Incarceration is not appropriate or necessary in this case. Instead, Ms. Shuck can benefit from a continuation of her period of supervised release to stay connected with mental health and substance abuse treatment programs.

## I. Ms. Shuck Is Making Reasonable and Good Faith Efforts to Comply With Supervised Release Conditions and Should Not Be Incarcerated for her Co-Occurring Mental Illness and Drug Addiction.

On September 4, 2014, Ms. Shuck was sentenced in the Western District of Virginia to ten years' imprisonment and five years' supervised release in this case for Conspiracy to Distribute and Possession With Intent to Distribute 280 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 846. Her term of supervised release began on July 2, 2021. Jurisdiction was transferred to this Court for Supervised Release Supervision pursuant to 18 U.S.C. § 3605 on August 4, 2022.

Ms. Shuck's ongoing struggle with drug addiction gave rise to the instant petition. Ms. Shuck has suffered from drug addiction for approximately three decades—since she was a teenager. As detailed in the PSR and Ms. Shuck's sentencing memorandum in the underlying case, Ms. Shuck was introduced to drugs, including crack cocaine, by her mother and stepfather when she was a child. *See* PSR ¶ 67. She quickly became addicted, and survived a traumatic adolescence, including physical and sexual abuse from her stepfather and being essentially pimped out by her mom. She followed in the footsteps of her parents and both used and sold drugs as a young adult. In 2014, she was sentenced to ten years' incarceration and five years' supervised release for her low-level role in a crack-cocaine distribution scheme in the Winchester, VA area. In addition to her lifelong struggle with substance abuse disorder, Ms. Shuck also suffers from bipolar disorder and post-traumatic stress disorder. *See* PSR ¶ 70.

Ms. Shuck has sought and complied with drug treatment numerous times throughout her life. She has participated in detox programs and previously managed to maintain sobriety for months or years before relapsing. PSR ¶ 72. At her request, while incarcerated in this case, Ms. Shuck completed the Bureau of Prisons Residential Drug Abuse Program ("RDAP"). To her credit,

she has demonstrated consistent compliance with treatment programs and consistent efforts to get the help she knows that she needs.

Ms. Shuck has been generally compliant with her terms of supervised release in this case. She moved to Washington, D.C., to be closer to her daughter and grandchildren. She got a job. She had stable residence and employment, she participated in mental health treatment and medication management, and was referred for substance abuse assessment. Thereafter, Ms. Shuck participated in integrated treatment for substance abuse and mental health issues through Kinara Health Care Services. In the nearly three years that Ms. Shuck has been on supervised release, she has sustained no new convictions.

Ms. Shuck has demonstrated her ability, with community support, to remain drug-free and manage her mental health. The first two years of Ms. Shuck's supervised release in this case passed without any allegations of substance use. Ms. Shuck did briefly relapse in October 2023, which she admitted to her supervising probation officer and took accountability for. *See* ECF No. 2 at 2. In response, the probation officer directed Ms. Shuck to continue to participate in her dual-diagnoses treatment modality. Ms. Shuck continued to attend dual diagnoses individual mental health and substance abuse counseling. She attended counseling consistently.

Unfortunately, in December 2023, Ms. Shuck lost her job, and relapsed again. This time, Ms. Shuck's relapse was more significant. When the probation office conducted a home visit in January 2024, Ms. Shuck admitted her relapse to her supervising officer and again took accountability. In March 2024, at the probation officer's direction, Ms. Shuck reported to the Department of Behavioral Health for an intake assessment for substance abuse treatment. Unfortunately, the U.S. Probation Office does not have any contracts to provide inpatient substance abuse treatment to individuals on federal probation or supervised release. Therefore, the

probation officer could only refer Ms. Shuck to outpatient services. Ms. Shuck did not have an attorney assigned in this case at the time to help advise her or connect her to an inpatient treatment program. Ms. Shuck was in need of help, but on her own, and in the midst of a serious relapse. Although Ms. Shuck reported to the Department of Behavioral Health for an intake assessment, she was only referred to an outpatient program. Clearly, outpatient treatment was not sufficient. Ms. Shuck continued to struggle with her addiction until her arrest on the arrest warrant associated with the instant probation petition in May 2024. While the probation office considers Ms. Shuck a loss of contact, she was consistently residing at her known address, attempting outpatient treatment, and intermittently in contact with her assigned probation officer. *See* ECF No. 2.

With the agreement of the parties and her assigned probation officer, after being arrested in this case, Ms. Shuck enrolled in and successfully completed a 28-day inpatient and detox program at Samaritan Inns. Ms. Shuck recognizes that a silver lining of her arrest and period of incarceration at the D.C. jail is that she was ultimately connected to the inpatient treatment she badly needed.

Unfortunately, but not surprisingly, despite her genuine efforts to stay sober and her consistent compliance with assessments and treatment, Ms. Shuck continues to suffer from the relapsing disease of drug addiction. She again truthfully admitted relapse to her assigned probation officer after a July 9, 2024 positive drug test. Ms. Shuck has explained to undersigned counsel that she entered and completed the inpatient treatment program at Samaritan Inns truly dedicated to pursuing her sobriety. She was released from that program late in the day on July 3, 2024. The following day, July 4, 2024, was a federal holiday. Because it was a federal holiday, the Department of Behavioral Health sites where Ms. Shuck had been directed to report to be connected with outpatient treatment and her mental health medication were closed. Unfortunately,

Ms. Shuck ran into the wrong person at the wrong time: while in the grocery store on July 4, she was offered crack-cocaine by an old acquaintance, and she made the wrong decision and used. Ms. Shuck admitted the use to her counsel and to the probation office, and felt terrible about it. Immediately, she reached out and connected herself to mental health services. She has since been proactively working with the probation office to swiftly be reconnected with her mental health medication and additional substance abuse treatment. Ms. Shuck has an assessment scheduled with Family Medical & Counseling Services on July 24, 2024, and is willing and eager to comply with whatever treatment program she is referred to. She has been clean since July 4, and is proud of her current sobriety.

Ms. Shuck recognizes what she needs to do in order to stay clean: seek treatment, keep herself busy, and stay away from negative environments. She is spending more time with her grandchildren, keeping busy, and pursuing stable employment. She has accepted a housekeeping job at George Washington University. Ms. Shuck is currently getting her identification documents in order, and plans to start that job in August 2024.

**II. Incarceration Is Neither Necessary or Warranted Here, Where Ms. Shuck's Noncompliance Stems Entirely from Her Disease of Addiction.**

Ms. Shuck's teenage drug addiction put her at increased risk for becoming dependent and addicted as an adult, and she has likely developed lasting physiological changes. *Drugs, Brains, and Behavior: The Science of Addiction* ("*Science of Addiction*"), Nat'l Inst. on Drug Abuse, at 3, 9–10, 18 (July 2018). "Brain studies of people with addiction show physical changes in parts of the brain that are very important for judgment, making decisions, learning and memory, and controlling behavior" and "explains the harmful behaviors of addiction that are so hard to control." *The Science of Drug Use: Discussion Points*, Nat'l Inst. on Drug Abuse, at 2 (Feb. 2017).

Drug addiction is not a choice, but rather "a chronic, relapsing disorder" that "involves functional changes to brain circuits involved in reward, stress, and self-control, and those changes may last a long time after a person has stopped taking drugs." *Science of Addiction* at 4. It is now hardly a choice for Ms. Shuck, but rather a brain disorder that she must recover from and manage over time—for the rest of her life.

That drug addiction is a "relapsing disorder" means that people like Ms. Shuck "who are recovering from an addiction will [unfortunately] be at risk for relapse for years and possibly for their whole lives." *Id*. at 3. "Recovery from drug addiction requires effective treatment, followed by management of the problem over time." Bennett W. Fletcher *et al.*, *Principles of Drug Abuse Treatment for Criminal Justice Populations*, Nat'l Inst. on Drug Abuse, at 1 (Apr. 2014). "Recovery from dependence is a long-term process." *PCP Abuse and Dependence*, Tufts Medical Center, https://hhma.org/healthadvisor/aha-pcp-bha/.

Ms. Shuck has been making real efforts to maintain sobriety and move forward in a positive way. Ms. Shuck has only been out of her inpatient treatment program for less than three weeks, and she already has a new job lined up. The docket in this case reveals that Ms. Shuck has generally complied with the terms of her supervised release and the assessment and treatment recommendations from the Probation Office, and has complied with—and even successfully completed—numerous mental health and substance abuse-related assessments and programs. Ms. Shuck has also taken other positive steps while on supervision in this case, including maintaining a stable residence, holding down jobs, and reconnecting with her family.

Ms. Shuck is willing and eager to continue mental health and substance abuse treatment programs. She has a dual diagnosis assessment at Family Medical & Counseling Services, arranged

through her probation officer, scheduled for this Wednesday, July 24, 2024, at which time she expects to be connected to mental health and substance abuse treatment programs.

Revocation is not warranted here, due to the nature of Ms. Shuck's noncompliance and the treatment options available as an alternative to incarceration. To the extent that the government or probation office may argue that revocation is statutorily required, it is not. Although § 3583(g)(1) mandates courts to revoke a defendant's term of supervised release for drug possession and require him to serve a term of imprisonment, § 3583(d) requires courts to consider "whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception . . . from the rule of section 3583(g) when considering any action against a defendant who fails a drug test." Here, Ms. Shuck's noncompliance clearly stems from her addiction. Therefore, the Court must consider whether an exception to mandatory revocation is warranted and "ha[s] the discretion to provide for treatment rather than imprisonment." *United States v. Pierce*, 132 F.3d 1207, 1208 (8th Cir. 1997). *Accord United States v. Hammonds*, 370 F.3d 1032, 1038 (10th Cir. 2004) (district court "require[d] . . . to consider whether to grant a defendant otherwise subject to mandatory revocation under subsection (g)(1) an exception, . . . by ordering the defendant to undergo or continue substance abuse treatment instead of revoking his term of supervised release"); *United States v. Crace*, 207 F.3d 833, 835 (6th Cir. 2000) ("For individuals like Crace who have failed a drug test, the district court must consider whether an appropriate substance abuse program was available, and whether enrollment in such a program was an option preferable to prison."); *United States v. Russell*, No. 15-cr-272 (CKK/GMH), 2022 WL 1473685, at *3 (D.D.C. Apr. 25, 2022) ("Yet despite the mandatory language of section 3583(g), courts are not without discretion in determining whether positive drug tests will result in the defendant's reincarceration.").

If the Court finds that mandatory revocation applies, an exception to revocation is warranted. Ms. Shuck's struggles with drug addiction are well-documented in this case and related to co-occurring mental illness. She needs and wants ongoing treatment, she has been actively and willingly engaged in treatment, and she has demonstrated the ability to remain drug-free for extended periods of time with appropriate community support. This Court should find that an exception to any mandatory revocation rule is warranted and necessary to permit Ms. Shuck to receive the meaningful, ongoing, appropriate treatment that research shows is required to recover from drug addiction.

Revoking Ms. Shuck's supervised release because she is suffering from drug addiction would not serve the purpose of supervised release. The purpose of supervised release is "to assist individuals in their transition to community life," particularly "after the service of a long prison term for a particularly serious offense." *United States v. Johnson*, 529 U.S. 53, 59 (2000) (quoting S. Rep. No. 98- 225 p. 124 (1983)); *see also id.* ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration."). Nonetheless, supervised release is a form of "punishment" imposed "along with a term of imprisonment as part of the same sentence." *Mont v. United States*, 139 S. Ct. 1826, 1834 (2019). Thus, "when a defendant is penalized for violating the terms of his supervised release, what the court is really doing is adjusting the defendant's sentence for his original crime." *United States v. Haymond*, 139 S. Ct. 2369, 2380 n. 5 (2019); *see also Johnson v. United States*, 529 U.S. 694, 700- 01 (2000) (holding that post-revocation penalties are "part of the penalty for the initial offense"/"original conviction" or otherwise raise "serious constitutional questions"); *id.* at 702 ("[T]he relevant conduct is the initial offense."). Although "prison time is 'not interchangeable' with supervised release," *id*. at 1833, an overly harsh term of imprisonment "is of paramount importance to" a subsequent decision about supervised release. *Cf.*

*United States v. Epps*, 707 F.3d 337, 344-45 (D.C. Cir. 2013). In this case, Ms. Shuck is suffering from drug addiction—she is not selling drugs or otherwise involved in drug distribution. Her noncompliance is not voluntary, and in fact, she has made consistent efforts to comply with the terms of her release, including substance abuse and mental health assessment and treatment. Punishing Ms. Shuck for suffering from drug addiction by incarcerating her pursuant to an underlying conviction for drug *distribution* would not serve the purpose of supervised release.

The statutory provisions governing supervised release list only certain § 3553(a) factors that courts may consider to determine the length and conditions of supervised release and in "revok[ing] a term of supervised release, and requir[ing] the defendant to serve in prison" additional time "for the offense that resulted in such term of supervised release." 18 U.S.C. § 3553(c), (e) (3). Section 3583(c) and (e) do not cite § 3553(a)(2)(A), which lists the retributive purposes of sentencing, specifically, "the need for the sentence imposed—to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Rather, § 3583 instructs courts to consider only the following § 3553(a) factors: the nature and circumstances of the offense and the defendant's history and characteristics [(1)]; the need for the sentence imposed to deter criminal conduct [(2)(B)], protect the public from the defendant's further crimes [(2)(C)], and to provide the defendant with rehabilitative treatment [(2)(D)]; the Sentencing Guidelines [(4) and (5)]; the need to avoid unwarranted sentencing disparities [(6)]; and the need to provide restitution to any victims [(7)].

The statutory scheme makes sense because the Court already imposed—at the original sentencing—a term of imprisonment "sufficient but not greater than necessary" for retributive purposes. Accordingly, in deciding any sentence for Ms. Shuck, the Court may impose imprisonment only to deter criminal conduct, which Ms. Shuck submits is inappropriate as a

response to her addiction disorder, or to protect the public from Ms. Shuck, a purpose that is not implicated by these violations.

Respectfully submitted,
A.J. KRAMER
FEDERAL PUBLIC DEFENDER

*/s/*

Kate Adams
Assistant Federal Public Defender
625 Indiana Avenue NW
Suite 550
Washington, D.C. 20004
(202) 208-7500